EXHIBIT G

*In the Matter Of:*

# GREGORY J. SMITH

## -vs-

# NAVIENT SOLUTIONS, LLC

# KRYSTAL BURTON

## January 08, 2019



**CONNOR REPORTING**
111 Monument Circle, Suite 4350
Indianapolis, IN 46204
Phone: 317-236-6022
Fax: 317-236-6015
Toll Free: 800-554-3376

Krystal Burton
January 08, 2019

```
 1                  UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF PENNSYLVANIA
 2                  CASE NO. 3:17-CV-00191-KRG
                    HON. JUDGE KIM R. GIBSON
 3

 4    GREGORY J. SMITH,                  )
                                         )
 5          Plaintiff,                   )
                                         )
 6          -vs-                         )
                                         )
 7    NAVIENT SOLUTIONS, LLC,            )
                                         )
 8          Defendant.                   )

 9

10              DEPOSITION OF KRYSTAL BURTON

11

12       The deposition upon oral examination of KRYSTAL
      BURTON, a witness produced and sworn before me, Clarice
13    H. Howard, CCR-Ky, Notary Public in and for the County
      of Boone, State of Indiana, taken on behalf of the
14    Plaintiff, at the offices of Coots Henke & Wheeler,
      Connor Reporting, 255 East Carmel Drive, Carmel,
15    Indiana, on Tuesday, January 8, 2019, scheduled to
      commence at 12:45 p.m., pursuant to the Federal Rules
16    of Civil Procedure with written notice as to time and
      place thereof.

17

18

19

20

21

22

23

24

25
```



```
                                                              2
 1              A P P E A R A N C E S

 2

    FOR THE PLAINTIFF:
 3
            Tarek N. Chami
 4          PRICE LAW GROUP, APC
            8245 North 85th Way
 5          Scottsdale, Arizona 85258
            1.818.600.5565
 6          david@pricelawgroup.com

 7
    FOR THE DEFENDANT:
 8
            Eric N. Hurwitz
 9          STRADLEY RONON STEVENS & YOUNG, LLP
            457 Haddonfield Road, Suite 100
10          Cherry Hill, New Jersey 08002-2223
            1.856.321.2406
11          ehurwitz@stradley.com

12          Mark Raschess
            Navient Solutions
13          2001 Edmund Halley Drive
            Reston, Virginia 20191
14          1.703.810.3000
            mark.raschess@navient.com
15

16

17

18

19

20

21

22

23

24

25
```



Krystal Burton
3                       January 08, 2019

                                                                    3

    1        I N D E X   O F   E X A M I N A T I O N
                                                         PAGE
    2

    3    DIRECT EXAMINATION
           Questions by Mr. Chami......................... 4
    4

    5
                 *  *  *  *  *          *  *  *  *  *
    6

    7
             I N D E X   O F   E X H I B I T S
    8

    9                                                    PAGE

   10    Deposition Exhibits:

   11    No Exhibits

   12

   13

   14

   15

   16

   17

   18

   19

   20

   21

   22

   23

   24

   25



Krystal Burton
January 08, 2019

11

11

```
1       you're going to start calling on?

2    A   It does it automatically.

3    Q   Okay.  So you sit down at your desk, you put your

4        headset on and you log onto the computer and you

5        are automatically put into a calling campaign,

6        right?

7    A   Correct.

8    Q   Okay.  While you're making outbound calls, are you

9        able to have inbound calls come into you?

10   A   Yes.

11   Q   Okay.  Does it matter whether you're in a -- let me

12       just ask you, do you know what a predictive

13       campaign is?

14   A   Yes.

15   Q   Okay.  So in a preview campaign, the system pops

16       and gives you a name and a phone number and you

17       have to choose dial to place the call, right?

18   A   Correct.

19   Q   When you're in a predictive campaign, you log into

20       the system and the calls just come in, right?

21   A   Correct.

22   Q   And you don't get to see anything about who's

23       calling until you've been connected to a person,

24       right?

25   A   Correct.
```



Krystal Burton
12                              January 08, 2019

                                                                    12

1   Q     And what I mean by that, the campaign is running.

2         The campaign dials, let's say, Greg Smith, for

3         example, and he answers.  And then when he answers,

4         the system in this case would have connected him

5         with you on February 24th, right?

6   A     Correct.

7   Q     All right.  And I don't know how it is on your end

8         of the phone, but is there a little delay between

9         the time the client or the customer answers and the

10        call gets connected with you; do you know?

11  A     There can be.

12  Q     Okay.  And so when this call comes in through a

13        predictive campaign, you don't know who's going to

14        be on that phone with you until it's connected,

15        right?

16  A     Correct.

17  Q     And then automatically when the call is connected

18        to you, then your system gives you the account

19        information for that person, right?

20  A     Correct.

21  Q     All right.  And I think when that call comes in and

22        you've been connected, you ask the person to verify

23        their name, right?

24  A     Yes.

25  Q     So let's say in this case -- and you listened to



13

```
 1       the recording.  When was that, yesterday, last
 2       week, how long ago?
 3  A    Yesterday.
 4  Q    So you listened to the recording with Greg Smith.
 5       You called him.  He answered and you said is this
 6       Greg Smith and he said yes, right?
 7  A    No.
 8  Q    He didn't say yes; he didn't identify himself?
 9  A    Just by first name.
10  Q    You asked if this was Greg Smith, right?
11  A    No.
12  Q    What did you ask him?
13  A    I asked if Gregory was available.
14  Q    So you asked if Gregory was available and he said
15       yes, this is Gregory?
16  A    Correct.
17  Q    Did you want to ask if Gregory Smith was available?
18  A    I can do either or.
19  Q    He said he was him.  And then he said later in the
20       conversation, he told you he couldn't make a
21       payment and he asked you to stop calling, right?
22  A    Correct.
23  Q    He never gave you his Social Security number, did
24       he?
25  A    No.
```



Krystal Burton
14                                 January 08, 2019

14

1  Q     He never verified his date of birth, right?

2  A     No.

3  Q     But you knew when he said stop calling, that that

4        was a revocation of consent for you to dial him

5        over to TCPA revocation, right?

6  A     Correct.

7  Q     So what did you do when he told you to stop

8        calling?

9  A     Marked the account accordingly.

10 Q     What does that mean, accordingly to what?

11 A     Marked TCPA no.

12 Q     Okay.  And I noticed you did that for two different

13       numbers.  How come?

14 A     You're advised to do so on any number on the

15       account when they say anything regarding calls.

16 Q     So if they tell you to stop calling or only

17       communicate with me in writing or anything like

18       that, you understand that to mean no more TCPA call

19       number on their account, right?

20 A     Correct.

21 Q     Even though he didn't give you his Social Security

22       number, right?

23 A     Correct.

24 Q     Okay.  And do you know what happened when you

25       flagged it as TCPA no, what happens to the calls;



15

1      do they keep coming in?

2          MR. HURWITZ:  Object as vague.  Do you

3      understand the question?

4          THE WITNESS:  Somewhat, sort of.  It's not

5      clear.

6  BY MR. CHAMI:

7  Q   Let me just -- if you don't understand the

8      question, that's normally one of the things I

9      normally say at the beginning.  If I ask you a

10      question and you don't understand it or you think

11      my question is unclear or you didn't hear me

12      because the phone speaker cut off for whatever

13      reason, please don't guess at what you think I

14      might mean or what you think the word was that I

15      said when you didn't hear quite so clearly.

16          Just say I didn't hear you, I didn't

17      understand you, I'm sorry.  Could you rephrase and

18      I'll be happy to try to rephrase it, okay?

19  A   Okay.

20  Q   But if I ask you a question and you answer it, then

21      I'm going to assume you understood it, okay?

22  A   Correct.

23  Q   All right.  So when you spoke to Mr. Smith and you

24      told him -- and he told you he couldn't pay and he

25      didn't want any more phone calls, you advised him



1     that the calls would still continue, right?

2  A   No.

3  Q   You would mark the account, but calls would still

4     continue?

5  A   No.

6  Q   You didn't say that?

7  A   No.

8  Q   I'm might be getting the two phone calls confused.

9     There was another call in this case.  But do you

10     understand that even after he told you to stop

11     calling, that calls would still continue, just in a

12     different mode?

13  A   Yes.

14  Q   Okay.  So when a customer says they don't want any

15     more phone calls, you don't actually stop calling

16     them; you just call them in a different mode,

17     right?

18  A   Correct.

19        MR. CHAMI:  Let's go off the record.

20             (A short break was taken.)

21  BY MR. CHAMI:

22  Q   Krystal, just a couple of more questions.  When you

23     spoke to Mr. Smith and he asked for the calls to

24     stop, you said you changed the permissions or maybe

25     I'm remembering how someone else described it, but



```
 1       you flagged the account or changed the permissions

 2       from TCPA yes to TCPA no?

 3   A   Correct.

 4   Q   Did you do that for the numbers associated with the

 5       account or just this borrower?

 6   A   Just the borrower.

 7           MR. HURWITZ:  Well, just to clarify, Mr. Smith

 8       was the co-signer.  So I'm not sure who you meant

 9       by that.

10           MR. CHAMI:  Yes.  I mean I don't know.  If

11       someone is a co-signor, I don't know, are they

12       still a borrower.  I don't mean to use the term

13       borrower or co-signer interchangeably, but I'm

14       speaking of Mr. Smith right now.

15   BY MR. CHAMI:

16   Q   So when you flagged the account to change the

17       permissions, did you only do it for Mr. Smith or

18       any other person obligated on the account?

19   A   Just Gregory Smith.

20   Q   And Gregory Smith, when I say the account, it's

21       just one account with multiple people who are

22       either signers or co-signers on the account, right?

23   A   Yes.

24   Q   Mr. Smith doesn't have a different account number

25       for the same loan that I think his daughter Maria
```



18

```
 1       would have, right; it would still be the same

 2       account number?

 3   A   Correct.

 4   Q   Okay.  And the way you handled the flagging of the

 5       account, is that consistent with your training on

 6       how you're supposed to handle the fagging?

 7            MR. HURWITZ:  I'm just going to object because

 8       the training that she received or didn't receive

 9       was specifically listed by the judge in his order

10       and opinion as a topic that is not subject to the

11       deposition.

12            MR. CHAMI:  I disagree that my question

13       violates that order in any way.  I'm specifically

14       asking about the conduct at issue in this case, the

15       way she handled it, it was that how she was trained

16       to handle it.

17            MR. HURWITZ:  Again, I'm going to object and

18       instruct her not to answer that question, because

19       my reading of the judge's order specifically says

20       Smith is entitled --

21            MR. CHAMI:  I have the order in front of me.

22            MR. HURWITZ:  Yeah, paragraph 6.  The

23       depositions are to be limited in scope to the

24       representative's conversations with Smith.  Smith

25       shall not seek testimony about the call
```



19

1    representative's training on TCPA compliance.   It

2    seems to me that your question is exactly within

3    the meaning of the last sentence.

4         MR. CHAMI:  Well, I'm not asking about her

5    training specifically or what training she received

6    or anything about her training other than whether

7    the call to Mr. Smith and the way it was handled,

8    whether or not it was as she was trained to handle

9    them.  I'm not asking about what the training was.

10        MR. HURWITZ:  But you are.

11        MR. CHAMI:  If you want to instruct her not to

12   answer the question, I guess we can try to get the

13   judge on the phone.  I wasn't on the phone call,

14   but I'm not letting that question go.

15        MR. HURWITZ:  I'm just struggling with how it

16   isn't a question about her training.  You're

17   effectively wanting her to respond to you about

18   what her training on the issue was and therefore

19   it's --

20        MR. CHAMI:  I didn't ask what her training

21   was.

22        MR. HURWITZ:  Yeah, but you're asking her if

23   it's consistent.  It's the same exact -- it's the

24   flip side of the same coin.

25        MR. CHAMI:  It's really not because I'm not



Krystal Burton
January 08, 2019

20

20

1   asking anything about what the training consisted

2   of, how she got the training, when she got the

3   training, what the training told her.  I didn't

4   hear anything about that.  I obtained that

5   information that support her records.

6       I'm just asking her the way she handled the

7   call was it consistent with the way she was

8   trained.  If you're telling me that you won't allow

9   her to answer that question, then we're going to

10  get the judge on the phone because I don't see how

11  you can say that, in your reading of this order

12  would prevent me from using the word training.

13  Based on the way you're saying it, I can't even say

14  the word training in a question.

15      This is way too restrictive, and if you want

16  to get the judge on the phone over that and you

17  cannot let her answer the question, that's fine.

18  We'll call the court.

19      MR. HURWITZ:  Yeah, I think we may have to do

20  that because we just have a different reading of

21  it.

22      MR. CHAMI:  It's not about a different

23  reading.  This is a very straightforward simple

24  question.  And if you're saying you're going to

25  instruct your client -- by the way, unless I'm



Krystal Burton
January 08, 2019

21

 1   asking for privileged information, it should never

 2   prompt an instruction not to answer a question.

 3       If you're saying that my question violates the

 4   court's order, she should answer the question and

 5   then you can take it up with the judge.

 6       MR. HURWITZ:  No.  But we did and it was a

 7   motion for a protective order that we filed.  So we

 8   got an order on the protective order.

 9       MR. CHAMI:  I'm not asking for her to violate

10   the protective order.  I'm not asking her about her

11   training.  I'm not asking her what she was trained

12   to do, what she read, what documents she looked at,

13   what materials she was shown, when she was shown

14   it, at what time and location, what pages of the

15   training materials she reviewed.

16       My question is simple.  As you understood your

17   training, did you handle Mr. Smith's call

18   consistent with it.  If you're saying you won't let

19   her say yes or no to that question and you want me

20   to call the court over it, fine.

21       MR. HURWITZ:  Let me talk to my client.  We'll

22   take a quick break and I'll be back on the record.

23       MR. CHAMI:  Okay.

24               (A short break was taken.)

25       MR. HURWITZ:  We're back on the record.  So if



22

```
1        I understand your question you want to ask her
2        whether or not she believes her handling of the
3        call was consistent with her training.  If that's
4        the limited extent of your question, we'll allow
5        her to answer it.  But we presume by that, we're
6        not allowing additional questions into what that
7        training was, when she received the training, what
8        she reviewed as part of her training --
9            MR. CHAMI:  No, no.  I have no intention of
10           going any further in training.
11           MR. HURWITZ:  Okay.  If we're all on board
12           with that, I will allow you to ask that question
13           and her to answer that.
14   BY MR. CHAMI:
15   Q    So, Krystal, the way you handled the call with
16        Mr. Smith, was that consistent with the way you
17        were trained to handle the call?
18   A    Yes.
19           MR. CHAMI:  I don't have any more questions.
20           MR. HURWITZ:  Nothing from us.
21
22   (Time noted 1:30 p.m.)
23           AND FURTHER THE DEPONENT SAITH NOT.
24                        (Signature Waived)
25                   _____
                     KRYSTAL BURTON
```



Krystal Burton
23                    January 08, 2019

23

1   STATE OF INDIANA        )
                            )   SS:
2   COUNTY OF BOONE         )

3

4        I, Clarice H. Howard, CCR-Ky, Notary Public in

5   and for the County of Boone, State of Indiana, at

6   large, do hereby certify that Krystal Burton, the

7   deponent herein, was by me first duly sworn to tell

8   the truth, the whole truth, and nothing but the

9   truth in the aforementioned matter;

10       That the foregoing deposition was taken on

11  behalf of the Defendant at the offices of Coots,

12  Henke & Wheeler, Connor Reporting, 255 East Carmel

13  Drive, Carmel, Indiana, pursuant to the Federal

14  Rules of Civil Procedure;

15       That said deposition was taken down in

16  stenograph notes and afterwards reduced to

17  typewriting under my direction, and that the

18  typewritten transcript is a true record of the

19  testimony given by the said deponent; and that

20  signature of the transcript was waived by said

21  deponent;

22       That the parties were represented by their

23  counsel as aforementioned.

24       I do further certify that I am a disinterested

25  person in this cause of action, that I am not a



Krystal Burton
24                    January 08, 2019

                                                          24
1       relative or attorney of either party or otherwise

2       interested in the event of this action, and that I

3       am not in the employ of the attorneys for any

4       party.

5            IN WITNESS WHEREOF, I have hereunto set my

6       hand and affixed my notarial seal this 15th day of

7       January, 2019.

8

9                         *Clarice Howard*

10                        _____
                          Clarice H. Howard, CCR-KY
11                        Notary Public

12
        My Commission Expires:
13      July 24, 2026
        County of Residence:
14      Boone County, Indiana

15

16

17

18

19

20

21

22

23

24

25

